UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAKED WHEY, INC., doing business as NAKED NUTRITION,<br><br>Plaintiff,<br><br>v.<br><br>WUNDERKIND CORPORATION,<br><br>Defendant. | CIVIL ACTION NO.<br><br>22 CV _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff NAKED WHEY, INC., doing business as NAKED NUTRITION ("Plaintiff" or "Naked Nutrition"), through its undersigned counsel, alleges against Defendant WUNDERKIND CORPORATION ("Defendant" or "Wunderkind") as follows:

## **NATURE OF THE CASE**

1. This is a breach of contract action between a nutritional supplement company, Plaintiff Naked Nutrition, and its marketing company, Defendant Wunderkind. Beginning around June 2021, through a series of written agreements, Naked Nutrition retained Wunderkind to capture the e-mail addresses of visitors to Naked Nutrition's website who elected to opt-in to its mailing list, and to share this information with Naked Nutrition only. Recently, however, Naked Nutrition discovered that for approximately six months' time, and over the course of at least four distinct marketing campaigns, Wunderkind enrolled more than 22,000 of Naked Nutrition's unique website visitors into the mailing list of an unrelated third party company (who Wunderkind touts as one of its most successful clients), instead of Naked Nutrition's mailing list. As a result, Naked Nutrition lost significant sales. Further, Naked Nutrition has recently learned that Wunderkind also enrolled approximately 50,000 other website end-users into Naked Nutrition's mailing list, who never opted-in to it and instead intended to opt-in to one or more other third party companies' mailing lists, who are also clients of Wunderkind. Through this action, Naked Nutrition alleges

1

that Wunderkind breached its contract with Naked Nutrition as a result of its gross negligence in performing its services pursuant to the parties' agreements, and is liable to Naked Nutrition for significant monetary damages, which are believed to be no less than $500,000.

## THE PARTIES

2. Plaintiff, NAKED WHEY, INC., doing business as NAKED NUTRITION ("Plaintiff" or "Naked Nutrition"), is a corporation organized and existing under the laws of the State of Florida, having its principal place of business located at P.O. Box 348634, Coral Gables, Florida, 33234.

3. Defendant, WUNDERKIND CORPORATION ("Defendant" or "Wunderkind"), is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business located at 285 Fulton Street, One World Trade Center, 74th Floor, New York, New York 10007.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a)(1), because this action is between citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Wunderkind because it has its principal place of business located in the State of New York.

6. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(1), because the only defendant, Wunderkind, resides in this district.

7. Venue is also proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims at issue occurred within this district.

8. Venus is also proper in this district because this action arises from the breach of a certain written contract that expressly provides for venue in this district.

## FACTUAL ALLEGATIONS

**I.   The Parties' Businesses and Relationship**

9. Plaintiff, Naked Nutrition, sells premium nutritional products and ingredients, such as protein powders, supplements and multivitamins, which contain no artificial flavors, colors, sweeteners or mixing agents.

10. Beginning in 2014 with only 5 single-ingredient products, Naked Nutrition's business has grown to offer over 50 products today, with most having only 3 ingredients or less.

11. Naked Nutrition's business success is due not only to the premium nature of its products but also due to its significant investments and efforts in marketing.

12. As a result of Naked Nutrition's premium products and marketing efforts, Naked Nutrition has formed a loyal base of customers who regularly make repeat purchases, enter into product subscriptions, try new products, subscribe to Naked Nutrition's newsletters and social media, and refer their friends to Naked Nutrition's products, leading to even more loyal customers and sales for Naked Nutrition.

13. Defendant, Wunderkind, is a marketing company that that provides "web traffic" services for its clients (who typically sell a variety of consumer goods), such as gathering contact information and sales performance metrics about the visitors to its clients' websites, which Wunderkind then digests and shares with its clients to further enhance their own sales and marketing efforts. These performance metrics are also used by Wunderkind to propose additional business opportunities and "optimization" services to its clients.

**II.   The Master Platform Agreement**

14. On or about June 28, 2021, Plaintiff and Wunderkind entered into a written contract, identified as the Wunderkind Master Platform Agreement (hereinafter, "Master Platform Agreement").

15. The Master Platform Agreement is governed by New York law.

16. The Master Platform Agreement outlined the general relationship, and rights and responsibilities, among Naked Nutrition and Wunderkind, and contemplated further "Order Forms" for specific future marketing campaigns, such as by e-mail and text message.

17. The Master Platform Agreement, and the related subsequent Order Forms, required Wunderkind to collect and share with Naked Nutrition, *and Naked Nutrition only*, the contact information and sales performance metrics relating to Naked Nutrition's website end-users.

18. Among the various services that Naked Nutrition retained Wunderkind to perform in connection with the Master Platform Agreement was the implementation of a pop-up window on Naked Nutrition's website, which would offer a discount on a future purchase of a Naked Nutrition product by a website end-user in exchange for that user's e-mail address, which could then be used by Naked Nutrition for follow-ups on products the visitor viewed or placed into their online "carts," and for future promotions of Naked Nutrition's goods and services. A representative example of the pop-up window is depicted below.




### III. Wunderkind's Breach Of The Master Platform Agreement

19. On or about September 27, 2022, Naked Nutrition discovered that visitors to its website, who input their e-mail addresses into the Wunderkind operated pop-up window, were not being enrolled into Naked Nutrition's e-mail marketing list, as required by the Master Platform Agreement and related Order Forms, but were rather being enrolled into the e-mail marketing list of one of Wunderkind's other clients (who Wunderkind touts as one of its "success stories"), third party CORKCICLE, LLC ("Corkcicle"), which produces a variety of drinkware products, such as tumblers, chillers and coolers bags.

20. Upon confrontation of this issue, on or around September 30, 2022, Wunderkind informed Naked Nutrition that the foregoing mix-up was the result of "human error" by a Wunderkind team member, who input Corkcicle's ESP Settings code into **four** distinct Naked Nutrition e-mail opt-in campaigns, instead of using Naked Nutrition's ESP Settings code.

21. Upon information and belief, this egregious, repeated and grossly negligent error by Wunderkind lasted, and was undetected by Naked Nutrition, for approximately 6 months.

22. Upon information and belief, approximately 22,281 unique visitors to Naked Nutrition's website who input their e-mail addresses into the Wunderkind operated pop-up window on Naked Nutrition's website were enrolled into Corkcicle's e-mail database, instead of Naked Nutrition's e-mail database.

23. While some of these 22,281 unique website visitors were later "recovered" by Wunderkind, the "conversion rate" (i.e., the percentage of users who make an initial purchase) of said users was paltry compared to the conversion rate of Naked Nutrition's website users who were correctly and promptly enrolled into Naked Nutrition's e-mail database.

24. Upon information and belief, this is because many initial purchases of Naked Nutrition's goods and services are "impulse" purchases, for which time is of the essence. In other words, in order to secure initial purchases by prospective customers, it is critical for a one-time discount to be promptly offered to a website visitor in order to entice the initial purchase, through both a pop-up window and prompt follow-up e-mails.

25. Moreover, because the conversion rate of the recovered e-mail addresses was so small, Naked Nutrition not only lost initial sales opportunities but also, upon information and belief, lost significant subsequent (i.e., repeat) sales over the average lifetime of a typical consumer of Naked Nutrition's goods and services.

26. Upon information and belief, as a result of Wunderkind's wrongdoing, Naked Nutrition estimates that it has lost no less than $500,000.00 in sales from the lost 22,281 unique impressions.

27. In addition to these lost sales opportunities, Naked Nutrition's time and resources spent on the four distinct e-mail marketing campaigns with Wunderkind ended up being practically worthless because Naked Nutrition could not capture many of the prospective customers that were the targets of those campaigns.

28. Additionally, as a result of Wunderkind's wrongdoing, Naked Nutrition's other marketing efforts and expenses, which drew visitors to its website in the first place, benefitted Wunderkind rather than Naked Nutrition because it was able use the data from those visitors to promote its other clients' brands, which would naturally inure to Wunderkind's benefit.

29. While the Master Platform Agreement provides in Section 7(a) for certain limitations on Wunderkind's liability to Naked Nutrition in connection with the services contemplated thereunder, under New York law, such provisions are unenforceable as a matter of public policy where, as here, the damages suffered are the result of gross negligence.

30. As further evidence of Wunderkind's gross negligence in the performance of its services to Naked Nutrition, on November 1, 2022, Wunderkind informed Naked Nutrition that it (Wunderkind) made another similar coding mix-up with another one of its clients (whose identity Wunderkind has not disclosed), which caused approximately 50,000 website end-users being opted-in to Naked Nutrition's mailing list instead of Wunderkind's other client's mailing list.

31. Upon information and belief, Wunderkind has repeatedly made this same error with several of its other clients, which errors have similarly impacted the accuracy of Naked Nutrition's mailing list, and which errors Wunderkind has not fully disclosed to Naked Nutrition.

## FIRST CAUSE OF ACTION
### Breach of Contract

32. Naked Nutrition repeats and realleges the allegations of previous paragraphs as though fully set forth herein.

33. On or about June 28, 2021, Naked Nutrition and Wunderkind entered into the written Master Platform Agreement.

34. The Master Platform Agreement required Wunderkind to collect and promptly share with Naked Nutrition, and Naked Nutrition only, the contact information and sales performance metrics relating to Naked Nutrition's website end-users.

35. Naked Nutrition performed all, or substantially all, of the significant things that the Master Platform Agreement required it to do.

36. All conditions required for Wunderkind's performance under the Master Platform Agreement have occurred or were excused.

37. Wunderkind failed to perform all, or substantially all, of the significant things that the Master Platform Agreement required it to do, namely promptly sharing with Naked Nutrition, and Naked Nutrition only, the contact information and sales performance metrics relating to Naked Nutrition's website end-users.

38. Naked Nutrition has not waived or excused Wunderkind's failures to perform under the Master Platform Agreement.

39. Naked Nutrition has been harmed as a result, in amounts that are currently unknown, but which are believed to be no less than $500,000.00, and will be determined according to proof by the time of trial.

40. Wunderkind's breach of the Master Platform Agreement was a substantial factor in causing Naked Nutrition's harm.

## PRAYER FOR RELIEF

WHEREFORE, Naked Nutrition prays for judgment against Wunderkind as follows:

1. For general damages according to proof;

2. For consequential damages according to proof;

3. For costs of suit and attorneys' fees to the extent permitted by law; and

4. For all such further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Naked Nutrition hereby demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

Dated: November 10, 2022

/s/ Lauren McCabe
Lauren McCabe
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038
(212) 806-5400
Email: lmccabe@stroock.com
       lacalendar@stroock.com

*Attorneys for Plaintiff,*
*NAKED WHEY, INC., doing business as NAKED NUTRITION*